**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JESUS PERALES,

                Plaintiff,

vs.                                                      Case No. 8:11-cv-475-T-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Jesus Perales ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of a "ruptured large intestine, diverticulitis, diabetes, hernia, feet numbness, knee numbness, depression, anxiety, and [a] history o[f] leg, eye, [and] ankle injuries." Transcript of Administrative Proceedings (Doc. No. 13; "Tr."), filed June 3, 2011, at 93; see also Tr. at 711. On August 8, 2007, Plaintiff filed applications for SSI and DIB, alleging an onset date of February 28, 2007. Tr. at 141-49, 150-52.[2] Plaintiff's applications were denied initially, see

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed June 6, 2011; Reference Order (Doc. No. 16), entered June 7, 2011.

[2] Plaintiff's application for SSI alleges an onset date of June 6, 2007. Tr. at 141. The application for DIB alleges an onset date of February 28, 2007. Tr. at 150. At a hearing held on November 20, 2009, an Administrative Law Judge ("ALJ") confirmed Plaintiff's alleged onset date is February 28, 2007, Tr. at 27, and the ALJ used that date as the alleged onset date in her Decision, Tr. at 12. Therefore, the undersigned assumes the February 28, 2007 date is accurate.

Tr. at 78-80 (DIB), 81-83 (SSI), and were denied upon reconsideration, see Tr. at 89-90 (SSI), 91-92 (DIB).

On November 20, 2009, the ALJ held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 24-68. At the time of the hearing, Plaintiff was forty-three (43) years old. Tr. at 28. The ALJ issued a Decision on April 23, 2010, finding Plaintiff not disabled through the date of the Decision. Tr. at 10-18. On January 6, 2011 the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On March 7, 2011, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three (3) issues on appeal. See Plaintiff's Memorandum in Support of Complaint (Doc. No. 19; "Pl.'s Mem."), filed September 9, 2011, at 1, 9-14.[3] First, Plaintiff takes issue with the ALJ's assignment of weight to the medical opinions of Plaintiff's treating physicians. See Pl.'s Mem. at 9-12. Second, Plaintiff argues it was error for the ALJ to rely on the opinions of nonexamining physicians, because such opinions conflict with the opinions of Plaintiff's treating physicians. See id. at 13. The third issue raised by Plaintiff is whether the ALJ properly evaluated Plaintiff's testimony and rendered an appropriate decision on Plaintiff's credibility. See id. at 13-14. Responding, Defendant contends the ALJ properly considered the opinions of Plaintiff's treating physicians, the medical evidence on the whole, and Plaintiff's testimony; and further, Defendant asserts the ALJ's Decision is supported by

---

[3] Plaintiff phrases the issues on page one of his memorandum differently than he phrases them in the headings immediately preceding each issue. Compare Pl.'s Mem. at 1, with id. at 9, 12, 13-14. When substantively addressing each issue, Plaintiff's phrasing changes even more. In the statement of the issues that follows, the undersigned captures the essence of Plaintiff's substantive arguments made within each issue.

substantial evidence. See generally Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem."), filed November 8, 2011. After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 12-18. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since February 28, 2007, the alleged onset date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: diabetes mellitus,

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

hernias, [and] diverticulitis." Tr. at 12 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 13 (emphasis and citation omitted).

The ALJ determined Plaintiff retains "the residual functional capacity [("RFC")] to perform sedentary work . . . except [ Plaintiff] is unable to drive a vehicle."  Tr. at 13 (emphasis and citation omitted).  At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a truck driver.  Tr. at 17 (emphasis and citation omitted).  At step five, after "[c]onsidering [ Plaintiff's] age, education, work experience, and [RFC]," the ALJ found "there are jobs that exist in significant numbers in the national economy that [ Plaintiff] can perform," Tr. at 17 (emphasis and citation omitted), including nonemergency dispatcher, telephone solicitor, and food and beverage checker, Tr. at 17, 18.  The ALJ concluded that Plaintiff "has not been under a disability . . . from February 28, 2007, through the date of th[e D]ecision."  Tr. at 18 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard

is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff's troubles began sometime in 1995 when he developed diverticulitis. See Tr. at 488, 723.  Between 1995 and 1997, Plaintiff underwent a total of five (5) or six (6) operations as a result of the diverticulitis. See Tr. at 488, 721.  Plaintiff's entire colon was removed and he now has a colostomy bag. See Tr. at 488, 723.  After the surgeries were completed, Plaintiff returned to work from about 2000 through 2006–most of that time period Plaintiff was self-employed. See Tr. at 181-82.  At some point, Plaintiff developed two hernias in his surgical wound, and he also has an open wound on his abdomen. See Tr. at 44-46, 687.  Apparently, the hernias are inoperable and the wound will not heal due to Plaintiff's diabetes. See Tr. at 45-46; see also Tr. at 437 (documenting a "chronic abdominal wound with colostomy"), 687 (noting "a chronic abdominal open wound").  Plaintiff stated in a Function Report, and his physicians documented, that Plaintiff suffers from "severe

diarrhea"–so severe, in fact, that Plaintiff on at least two (2) occasions was hospitalized due to dehydration. Tr. at 226, 723. His diarrhea can be controlled with medication, but unfortunately, that same medication causes problems with Plaintiff's blood sugar. Tr. at 723; see also Tr. at 47, 694, 696, 706. Plaintiff struggles financially with being able to afford all of his medications and medical supplies. See Tr. at 234, 347, 527, 679, 688, 689, 694.

As noted above, Plaintiff presents three (3) issues for this Court's consideration. Each issue is discussed in turn.

### A. ALJ's Treatment of Medical Opinions[5]

Plaintiff's first issue deals with the ALJ's assignment of weight to the medical opinions of Thomas Oates, M.D. ("Dr. Oates") and Brian T. Friend, ARNP ("Nurse Practitioner Friend")[6]; Robert C. Estupinan, M.D. ("Dr. Estupinan"); and Joffre R. Rivera, M.D. ("Dr. Rivera"), Pl.'s Mem. at 9-12, all employed by the Watson Clinic. The undersigned first summarizes the medical opinions, then recites the applicable law, and finally provides the analysis.

Dr. Oates and Nurse Practitioner Friend have treated Plaintiff's diabetes at the Watson Clinic, Department of Endocrinology since at least April 5, 2005. Tr. at 382-85. On October 2, 2007, Nurse Practitioner Friend completed a form, on behalf of Dr. Oates, entitled

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

[6] It appears from the record that Dr. Oates and Nurse Practitioner Friend work together and their opinions are joint opinions. The majority of the records are signed by both Dr. Oates and Nurse Practitioner Friend. The ALJ discussed their opinions and treatment notes as if they were provided by one person, and at times, referred to the opinions and treatment notes as being those of Dr. Oates only. See Tr. at 15, 16.

Diabetes Mellitus Residual Functional Capacity Questionnaire, in which they opined as follows. Tr. at 437-40. Plaintiff's prognosis was "fair," Plaintiff's diabetes was poorly controlled, and Plaintiff had a chronic abdominal wound with a colostomy. Tr. at 437. Plaintiff's impairments have lasted or could be expected to last at least twelve (12) months. Tr. at 438. Plaintiff could sit for at least six (6) hours in an eight (8) hour workday, and could stand/walk for about two (2) hours in and eight (8) hour workday. Tr. at 438. Plaintiff would need to take unscheduled breaks every two (2) hours, each break lasting ten (10) minutes. Tr. at 439. Plaintiff would miss about three (3) days of work per month due to his impairments and/or treatment. Tr. at 440.

A treatment note dated June 10, 2009, signed by Nurse Practitioner Friend and Dr. Oates, reflects that from a colostomy standpoint, "[t]here is a question of lifting and having a job that does not require lifting. It is difficult to say that [Plaintiff] is completely and totally disabled. . . . [I]t is possible he could get a desk job and function quite well." Tr. at 694. The note also indicates that Nurse Practitioner Friend and Dr. Oates were "not following [Plaintiff] for his gastrointestinal problems and colostomy issues." Tr. at 694.

Dr. Estupinan was Plaintiff's primary care physician at the Watson Clinic, Department of Internal Medicine. Tr. at 32, 55. There are treatment notes from Dr. Estupinan scattered throughout the record, one of which refers to Plaintiff as an "[u]nfortunate man with multiple medical problems and disabilities." Tr. at 697 (treatment note dated July 23, 2009); see also Tr. at 351-52 (treatment note dated February 7, 2007); 377-78 (treatment note dated June

15, 2005); 386-87 (treatment note dated March 15, 2005); 550-52[7] (CT scan results dated July 30, 2008); 703-04 (treatment note dated August 18, 2009). On June 24, 2009, Dr. Estupinan completed a form in which he opined that Plaintiff was unable to work "indefinitely in *any* capacity in *any* field." Tr. at 549 (emphasis in original). Dr. Estupinan diagnosed Plaintiff with, inter alia, insulin-dependent diabetes and recurrent diverticulitis. Tr. at 549. Dr. Estupinan noted that Plaintiff was "unable to drive due to use of insulin." Tr. at 549. Regarding Plaintiff's limitations on activities of daily living, Dr. Estupinan stated Plaintiff "require[d] daily injections to reduce ileostomy output. [Plaintiff] prone to volume loss/dehydration." Tr. at 549 (capitalization omitted).

Then, on August 18, 2009, Dr. Estupinan completed a Crohn's & Colitis Residual Functional Capacity Form, in which he indicated, inter alia, as follows. Tr. at 556-59. Plaintiff's prognosis was "fair." Tr. at 556. Plaintiff's "symptoms [we]re severe," and Plaintiff suffered from "severe diarrhea, malnutrition, and [he was] prone to dehydration." Tr. at 556. Plaintiff could sit and stand/walk for less than two (2) hours in an eight (8) hour workday. Tr. at 558. Plaintiff "need[ed] a job which permit[ted] shifting positions at will from sitting, standing or walking." Tr. at 558. Plaintiff would need to take "several" unscheduled restroom breaks during an eight (8) hour working day, each break lasting approximately thirty (30) minutes. Tr. at 558. Plaintiff would also need to lie down or rest about two (2) times in an eight (8) hour workday, each time lasting about an hour. Tr. at 558. Plaintiff would miss more than four (4) days of work per month. Tr. at 559. On November 18, 2009, Dr.

---

[7] Duplicates found at Tr. at 553-55, 572-74.

Estupinan wrote a letter noting that Plaintiff was "disabled secondary to severe gastrointestinal disease. . . . He was completely disabled prior to June 2009." Tr. at 718.

Dr. Rivera treated Plaintiff at the Watson Clinic, Department of GI, in August 2009, at the behest of Dr. Oates and Nurse Practitioner Friend. Tr. at 722-24. Dr. Rivera summarized Plaintiff's "very complicated medical history" and recognized that Plaintiff's medication to control his diarrhea "create[d] problems controlling his blood sugar." Tr. at 723. Dr. Rivera also documented that Plaintiff's "diarrhea ha[d] been so severe through the ostomy bag that, unfortunately, [Plaintiff] ha[d] been admitted multiple times for dehydration." Tr. at 721; see also Tr. at 723. On November 18, 2009, Dr. Rivera opined that Plaintiff was "disabled secondary to severe gastrointestinal disease. . . . [Plaintiff] was completely disabled prior to June 2009." Tr. at 719.

The Regulations instruct ALJs how to weigh the medical opinions of treating physicians[8] properly. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the

---

[8] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

The undersigned finds that the ALJ's assignment of weight to the opinions of Plaintiff's treating physicians is not supported by substantial evidence and that parts of the ALJ's Decision, as indicated below, lack adequate explanation–or have no explanation at all–and therefore frustrate judicial review. The ALJ's analysis of each opinion is reviewed below.

The ALJ assigned "great weight" to the opinion of Dr. Oates and Nurse Practitioner Friend. Tr. at 16. In doing so, the ALJ summarized their opinion as limiting Plaintiff to sedentary work. Tr. at 16. The ALJ failed to recognize, however, that the same opinion to

which she assigned "great weight" indicated that Plaintiff would miss approximately three (3) days of work per month. Tr. at 440. At the hearing, the VE specifically testified that if Plaintiff missed three (3) days of work per month, Plaintiff would be precluded from retaining the jobs identified. Tr. at 64. Considering Dr. Oates and Nurse Practitioner Friend's opinion on the whole, coupled with the VE's testimony, leaves an unexplained internal inconsistency in the opinion. On the one hand, the exertional limitations imposed suggest Plaintiff can perform sedentary work. On the other hand, the indication that Plaintiff would miss three (3) days of work per month, according to the VE, means Plaintiff cannot perform any work. In assigning the opinion "great weight," the ALJ apparently accepted Dr. Oates and Nurse Practitioner Friend's entire opinion. Yet, at no point in her Decision did the ALJ reconcile the inconsistency described above, which leads the undersigned to find error in the ALJ's Decision. In this regard, the ALJ's Decision is not supported by substantial evidence.

Defendant's attempt to persuade the Court that the ALJ must have given "little weight" to the limitation of Plaintiff missing three (3) days of work per month because the ALJ "did not mention it" is unavailing. Def.'s Mem. at 10. Given that an ALJ must state with particularity the weight assigned to "medical opinions and the reasons therefor," Sharfarz, 825 F.2d at 279-80, the undersigned declines to assume that the ALJ assigned little weight to a portion of the opinion, when in fact the ALJ stated that she assigned the opinion great weight and in doing so, listed no exceptions. Tr. at 16. The ALJ's wholesale assignment of "great weight" to Dr. Oates and Nurse Friend's opinion–in the face of the limitation that Plaintiff would miss three (3) days per month and the VE's testimony at the hearing–is not supported by substantial evidence.

As to Dr. Estupinan, the ALJ assigned his opinion "probative weight." Tr. at 16. The ALJ reasoned that "Dr. Estupinan gave [ Plaintiff] a fair prognosis, which is inconsistent with the numerous limitations he stated [ Plaintiff] suffered from." Tr. at 15-16. The ALJ also apparently discounted Dr. Estupinan's opinion because "Dr. Estupinan did not state that [ Plaintiff] was completely incapable of performing any work whatsoever on either form he completed." Tr. at 16. Concerning the first reason, the ALJ failed to adequately explain how a "fair" prognosis was inconsistent with severe limitations. The lack of explanation leaves the undersigned unable to determine whether this reason is supported by substantial evidence; therefore, it frustrates judicial review. The second reason relied upon by the ALJ, that Dr. Estupinan never opined Plaintiff was disabled, is wholly inaccurate. Dr. Estupinan expressly opined on more than one occasion that Plaintiff could not perform any work. Tr. at 549 (emphasis in original) (noting Plaintiff was incapable of "working and earning money indefinitely in *any* capacity in *any* field of work"); 718 (recognizing Plaintiff was "disabled secondary to severe gastrointestinal disease"). Additionally, Dr. Estupinan opined that Plaintiff would need to lie down or rest about two (2) times in an eight (8) hour workday, each time lasting about an hour; and Plaintiff would miss more than four (4) days of work per month. Tr. at 558-59. These limitations would lead almost anyone to conclude that Plaintiff could not work–and in fact, the VE testified that if Plaintiff missed three (3) days of work per month, Plaintiff would not be able to perform the jobs identified. Tr. at 64. Implicitly then, following the VE's reasoning, Dr. Estupinan's limitations would equate to Plaintiff being disabled. The ALJ's second reason is not supported by substantial evidence.

Finally, as to Dr. Rivera, the ALJ completely ignored his opinion. There is no mention of Dr. Rivera in the entire Decision. Whether Dr. Rivera qualifies as a "treating physician" is of no consequence here, because, by the Commissioner's own Regulations, medical opinions cannot simply be ignored. 20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c) (stating the Commissioner will consider and evaluate every medical opinion received). Because the ALJ did not address Dr. Rivera's opinion, it is not possible to determine whether the ALJ even considered it, which impedes judicial review.

Defendant's contention that Dr. Rivera's opinion and Dr. Estupinan's opinion are not medical opinions "because [they are ] conclusory declaration[s] of disability without statement[s] of physical or mental restrictions" misses the mark. See Def.'s Mem. at 16. Although the ultimate determination of whether a person is disabled is reserved to the Commissioner, the ALJ here did not properly consider the medical opinions accompanying the physicians' conclusions that Plaintiff was disabled. The error is not the ALJ's <u>failure to agree</u> with the physicians' conclusions indicating Plaintiff was disabled; rather, the ALJ's error is rooted in <u>not properly considering</u> the physicians' medical opinions accompanying such conclusions.

### B. Reliance on Nonexamining Physicians

Regarding the second issue raised by Plaintiff, Plaintiff argues the ALJ improperly relied on the opinions of nonexamining physicians because such opinions conflict with the opinions of Plaintiff's treating physicians. Pl.'s Mem. at 12-13. Given the undersigned's findings as to Plaintiff's first issue, it is futile to address this issue because the ALJ's

assignment of weight to such opinions may change on remand given the need to reevalaute the opinions of the treating physicians.

### C. Plaintiff's Credibility

As to the third and final issue, Plaintiff argues that "there is no substantial basis for dismissing [Plaintiff's] complaints concerning the effect of the colostomy." Pl.'s Mem. at 13-14 (capitalization omitted). In making this argument, Plaintiff contends the ALJ failed to properly evaluate Plaintiff's testimony, and the ALJ's credibility determination was flawed. Id.

"[C]redibility determinations are the province of the ALJ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications, and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

The ALJ summarized Plaintiff's testimony and then found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;

-14-

however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." Tr. at 14. In apparent support of that finding, the ALJ made two (2) observations: (1) Plaintiff "stated on a function report that he is able to do light housework, watch over his children, visit with friends, and that he can lift up to twenty pounds, limited by his colostomy bag," Tr. at 14 (citing Tr. at 227-34)[9]; and (2) Plaintiff was able to work from 2000 to 2007 "with the limitations caused by diverticulitis," Tr. at 14.[10]

There are four (4) areas of concern with the ALJ's finding regarding Plaintiff's credibility. Each is discussed below.

First, the ALJ merely listed the above two observations without providing any explanation as to how they render Plaintiff's testimony incredible. This Court cannot review whether these two observations amount to substantial evidence to support the ALJ's credibility determination given that the ALJ failed to explain it.

Second, regarding Plaintiff's wife's statements on the function report, in addition to not explaining how the statements help discredit Plaintiff, the ALJ's summary of the statements is somewhat misleading and incomplete. As to housework, Plaintiff's wife noted Plaintiff could wipe the kitchen counters and wash a few dishes, but "[h]e can't wash pots and pans, because it's more strenuous, and he can't stand for too long, his feet feel numb." Tr. at 229.

---

[9] The ALJ cited to a function report that was actually completed by Plaintiff's wife. This is of no consequence here, however, because the function report completed by Plaintiff's wife is substantially similar to a function report completed by Plaintiff. Compare Tr. at 219-26, with Tr. at 227-34.

[10] Plaintiff's earning statements show that his last receipt of income was in 2006. Tr. at 180, 182. Plaintiff did not receive any income in 2007. Tr. at 180, 182. The undersigned assumes that when the ALJ referred to the time period from 2000 to 2007, the ALJ meant the time period when Plaintiff actually received income, which was from 2000 through the end of 2006.

She also indicated that Plaintiff "can't bend or twist down to pick things up because of his ostomy and his hernias, they hurt, and he has open wounds in abdomen. He can't stand for very long." Tr. at 230. Regarding social activities, Plaintiff's wife stated that Plaintiff "watches [their] children play in front of the house," "talks on the phone," has friends visit, or goes to visit friends "once in awhile." Tr. at 231. But, Plaintiff "usually stays home and doesn't go anywhere," because "he gets uncontrollable gases, [and] people are very rude to him w[ith] their comments." Tr. at 231-32. In light of the testimony at the hearing and the form as a whole, it seems the ALJ ignored the evidence unfavorable to her position.

Third, regarding Plaintiff's ability to work from 2000 to the end of 2006, the ALJ did not discuss Plaintiff's testimony relating to the limitations he had during that period. For example, Plaintiff testified he was self-employed for the majority of that time period, because that allowed him to "go and come when [he] wanted to." Tr. at 41. But, there were times when he went to work and he had to pull his truck over because his bag "busted out on" him. Tr. at 42. When that happened, he would have to "try to get [his] wife to come where [he] was . . . because of the colostomy just coming off and all the diarrhea on it and gases would be appearing." Tr. at 42. Plaintiff's open wound also needed attention twice daily. See Tr. at 45.

Even more, Plaintiff's employment from 2000 through the end of 2006 was prior to his alleged onset date of February 28, 2007. Defendant cites two cases in support of the proposition that "it was proper for the ALJ to consider [that Plaintiff's ability to work from 2000 through 2006] undermined his complaint [that] the condition rendered him disabled after his alleged onset date." Def.'s Mem. at 20 (citing Melton v. Apfel, 181 F.3d 939, 941 (8th Cir.

1999); Tyra v. Sec'y of Health & Human Servs., 896 F.2d 1024, 1029 (6th Cir. 1990)). Both cases cited by Defendant dealt with claimants who worked after their alleged onset date. These cases are unavailing here, as Plaintiff has not worked since his alleged onset date.

Fourth, it is not clear from the ALJ's Decision whether in discrediting Plaintiff, the ALJ considered anything other than Plaintiff's alleged daily activities. The record is replete with testimony and evidence regarding "the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; [] precipitating and aggravating factors; [] adverse side-effects of medications, and [] treatment or measures taken by the claimant for relief of symptoms." Davis, 287 F. App'x at 760 (citations omitted). As an example of testimony, Plaintiff described his situation as "ugly," Tr. at 43, and testified that his colostomy bag "bust[s]," sometimes unexpectedly, "mostly every other day" depending on his movement, Tr. at 53, 54-55. Sometimes, says Plaintiff, he is "just walking around with the family. And next [thing] you know, Bam, hey, there it [(the colostomy bag)] goes." Tr. at 54-55. Plaintiff also testified that due to the size of the stoma, the hernias, and the open wound on his abdomen, he cannot change the colostomy bag on his own–his wife must help him. See Tr. at 43-44; see also Tr. at 212, 220. Plaintiff does "go to church with [his] wife and [his] kids Sunday. And sometime[s they] have a problem, [and they] have to go to the car and change the pouch because it [(the colostomy bag)] just came of[f him] or leaks wrong." Tr. at 55. As an example of medical evidence, Plaintiff's physicians documented the difficulties Plaintiff had with his medications. See Tr. at 678 (without his medication, Plaintiff "has this very very watery stool in [h]is colostomy bag"), 696 (medication "significantly reduced [Plaintiff's] incidence of dehydration, but contributes to hyperglycemia"), 723 (medication helps with

diarrhea but results in sugars not being controlled).  Without knowing whether the ALJ even considered anything other Plaintiff's daily activities, it cannot be said that her credibility finding is supported by substantial evidence in this regard.

In sum, as to Plaintiff's credibility, the ALJ failed to provide adequate reasons for finding Plaintiff not credible; and the reasons the ALJ listed are not supported by substantial evidence.  See Wilson, 284 F.3d at 1225.

## V. Conclusion

After careful consideration of the parties' memoranda and the entire file, the undersigned finds that the ALJ failed to render a Decision supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) Reevaluate the medical opinions of Dr. Oates and Nurse Practitioner Friend, Dr. Estupinan, and Dr. Rivera; assign appropriate weight; and provide reasons supported by substantial evidence for assigning such weight;
>
> (B) Reevaluate the medical evidence and the medical opinions of record as a whole;
>
> (C) Reconsider Plaintiff's testimony and if discredited, provide explicit and adequate reasons supported by substantial evidence; and

    (D) Take such other action as may be necessary to resolve this claim properly.

 2. The Clerk is further directed to close the file.

 3. In the event benefits are awarded on remand, Plaintiff's counsel be permitted thirty (30) days from receiving notice of the amount of past-due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See <u>Bergen v. Comm'r of Soc. Sec.</u>, 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on August 29, 2012.

              /s/ James R. Klindt
              JAMES R. KLINDT
              United States Magistrate Judge

jld
Copies to:
counsel of record